**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* C.A.

**No. 21-0280** (Kanawha County 19-JA-547)

**MEMORANDUM DECISION**

Petitioner Mother E.P., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's March 1, 2021, order terminating her parental rights to C.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Erica Lord, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights rather than employing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed a child abuse and neglect petition alleging that C.A. was born drug-exposed in August of 2019 and that petitioner tested positive for methamphetamine at the time of the child's birth. The DHHR alleged that the child's cord blood was also positive for methamphetamine and that the child was hospitalized for a week to monitor for withdrawal symptoms. The DHHR further alleged that the child was hospitalized for an additional day because she had stopped eating. According to the petition, petitioner entered into a protection plan for the child with the DHHR and listed the child's grandmother as a safety resource. The DHHR alleged that petitioner admitted to continuing to use methamphetamine after the child's birth. Finally, the DHHR alleged that petitioner and the father failed to provide the child with the necessary food, clothing, supervision, and housing since the child's birth.

The circuit court held an adjudicatory hearing in October of 2019 wherein petitioner stipulated to abusing and neglecting the child. The circuit court accepted petitioner's stipulation

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

and adjudicated her as an abusing and neglecting parent. The court ordered her to participate in parenting and life skills classes and granted her supervised visits with the child contingent on providing clean drug screens. The next month, petitioner moved for a post-adjudicatory improvement period.

The circuit court held a review hearing in December of 2019 at which time petitioner tested positive for methamphetamine and amphetamine at the hearing. A Child Protective Services ("CPS") worker provided petitioner with a drug screening informational packet and explained it to her a second time. The CPS worker testified that petitioner had failed to drug screen on prior occasions. The CPS worker further testified that petitioner had failed to respond to communications from the DHHR. According to the CPS worker, this meant that petitioner had not participated in parenting or adult life skills classes, as ordered by the court.

The circuit court held a series of dispositional hearings beginning in February of 2020. At the February hearing, the DHHR moved to amend the petition to name petitioner's husband as a potential father of C.A. The court then continued the February hearing to allow the parents to appear together. The court again continued the hearing in June, August, and September of 2020 to allow for the multidisciplinary team to hold meetings and the DHHR to file permanency plans.

In December of 2020, the circuit court held a final dispositional hearing wherein petitioner did not appear but was represented by counsel. At the hearing, a CPS case manager testified that petitioner and the father had failed to comply with any services or visitation despite efforts by service providers and the DHHR. The CPS manager also testified that the DHHR had difficulty communicating with or locating petitioner. In light of the evidence, the circuit court found that petitioner had done "absolutely nothing since the inception of this case" to correct the problems that led to the petition. The circuit court also found that petitioner had done "absolutely nothing" to avail herself of the services ordered by the court. Accordingly, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that she could correct the conditions of neglect in the near future and that termination was necessary for the child's welfare. It is from the March 1, 2021, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the

---

[2]The father's parental rights were also terminated below. The permanency plan for the child is adoption by her grandmother.

evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner sets forth only one assignment of error, that the circuit court erred in terminating her parental rights rather than granting her a less-restrictive disposition because permanency for the child had previously been achieved when the court granted the grandmother sole legal and physical custody of the child. According to petitioner, the circuit court was required to give precedence to the dispositions as listed in West Virginia Code § 49-4-604(c) and it should have granted her disposition pursuant to § 49-4-604(c)(5).[3] We find no error in the circuit court's termination of petitioner's parental rights.

Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are directed to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) defines "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" as follows: "the abusing [parent] . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help."

The circuit court correctly found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected because petitioner continued to abuse controlled substances, failed to visit or bond with the child, and failed to participate in the proceedings. Notably, petitioner does not dispute that she missed or failed several drug screens and did not have contact with the child throughout the proceedings, instead arguing that she could have been granted a less-restrictive disposition to resolve these issues. Additionally, petitioner argues that "there was no evidence that she could not be able to correct the issues that existed . . . within a reasonable amount of time." Yet the record below indicates that petitioner was completely noncompliant with the DHHR and refused to participate in services during the proceedings that could have remedied these issues. Ultimately, petitioner's assertion that she could remedy her issues with more time ignores the fact that she failed to stay drug free, attend scheduled court hearings, or participate in drug screens sufficiently to justify the return of the child to her care.

Next, petitioner takes issue with the circuit court's finding that termination of her rights was in the child's best interests. Specifically, petitioner argues that the child's grandmother has obtained full custody of the child and, therefore, termination of her parental rights was not in the best interests of the child. We disagree.

---

[3]West Virginia Code § 49-4-604(c)(5) provides that a circuit court may

> [u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

The court's findings on the whole clearly show that termination of petitioner's parental rights was necessary for the child's welfare. Indeed, the court made extensive findings concerning the need to terminate petitioner's parental rights in order to protect the child, including the fact that petitioner wholly abdicated her parental rights and responsibilities through her continued substance abuse and failure to provide the child with the necessary food, clothing, supervision, and housing. Additionally, assuming petitioner is correct that the grandmother will retain custody of and ultimately adopt the child, it would in no way entitle petitioner to a less-restrictive disposition. Petitioner does not contest the fact that she was properly adjudicated of abusing and neglecting the child; her conduct clearly endangered the child. Petitioner also disregards this Court's direction that "'an adoptive home is the preferred permanent out-of-home placement.' Syl. Pt. 2, in part, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998)." *In re N.H.*, 241 W. Va. 648, 658, 827 S.E.2d 436, 446 (2019). Accordingly, in order to provide an adoptive home, the circuit court must terminate the parental rights of the abusing parent and provide permanency for the child.

Based on the foregoing, we find no error in the circuit court's refusal to grant petitioner a less-restrictive alternative to termination of her parental rights, given that we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Due to petitioner's failure to address the conditions of abuse and neglect, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination was necessary for the child's welfare. Therefore, we likewise find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 1, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: October 13, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton